UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

JUN 0 3 2015

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CRIMINAL NO. H-15-68-SS |
| | § | |
| STEFANO GUIDO VITALE | § | |
| a.k.a. Steven Michael Vincent Palizzi | § | |
| a.k.a. Steven Nakayama | § | |
| a.k.a. Steve | § | |
| a.k.a. William Lopez | § | |
| ALAN MICHAEL LESCHYSHYN | § | |
| a.k.a. Bob | § | |
| a.k.a. Michael Leschyshyn | § | |
| a.k.a. Alan Michaels | § | |
| a.k.a. Alan Leschyn | § | |
| a.k.a. Michael | § | |
| a.k.a Antonio Esposito | § | |
| BREE ANN DAVIS | § | |
| TAMMIE ROTH HANANIA | § | |
| EDWARD PETER HANANIA | § | |

SECOND SUPERSEDING INDICTMENT

COUNT ONE
(Conspiracy - Title 18, U.S.C. §1349)

At all times material to this Indictment:

A. DEFENDANTS

1.     Stefano Guido VITALE, a.k.a. Steven Michael Vincent Palizzi, a.k.a.

Steven Nakayama, a.k.a Steve, a.k.a. William Lopez held himself out as the

1

President of Premium Concepts & Design, Inc., and the owner and Managing Member of PCD Exports, LLC, sellers of customized gaming vault bundles used with the XBOX 360 or PlayStation 3. VITALE also held himself out as William Lopez, the Managing Member of BGREM, LLC. VITALE utilized several corporations, including Premium Concepts and Design, Inc.; PC&D Exports, LLC; PCD Exports, LLC; BGREM, LLC; EinsteinModz Gaming Group, LLC; GBL Associates, LLC; Circle 8 Gaming, LLC; JJ Gaming Co., LLC; and Calibur 11, LLC in the execution of a scheme to defraud lending entities.

2.     Alan Michael LESCHYSHYN, a.k.a Bob, a.k.a. Michael Leschyshyn, a.k.a Alan Michaels, a.k.a. Alan Leschyn, a.k.a. Michael, a.k.a. Antonio Esposito held himself out as a video game industry consultant, a Chief Financial Officer, a Chief Operating Officer and a Finance Manager. LESCHYSHYN has experience as an accountant and used that experience to produce false financial statements for use in the scheme to defraud. LESCHYSHYN caused the incorporation of Alan Industries, LLC in Arizona. Alan Industries, LLC was used in the execution of the scheme to defraud and to collect and distribute proceeds from the fraud. LESCHYSHYN is also associated with PC&D Exports, LLC; PCD Exports, LLC; JJ Gaming Co., LLC; Circle 8 Gaming, LLC; EinsteinModz Gaming Group, LLC; BGREM, LLC; GBL Associates, LLC; and Calibur 11, LLC, each of which have been used in execution of the scheme to defraud.

3.    Bree Ann DAVIS held herself out to factoring companies as the manager of GBL Associates, LLC, a wholesaler of video game accessories and as the Financial Controller of Premium Concepts & Design, Inc.   DAVIS assisted VITALE and LESCHYSHYN in the scheme to defraud by contacting factoring companies for the purpose of fraudulently selling non-existent accounts receivable to factoring companies. DAVIS electronically provided altered bank records, false financial statements and manufactured invoices and purchase orders in an effort to convince factoring companies her company was an acceptable credit risk. DAVIS also communicated with factoring companies as the Financial Controller of Premium Concepts & Design, Inc. with regard to Premium Concepts & Design, Inc.'s nonpayment on invoices for which payment was due. Although no product had actually transferred hands, as represented in the invoice, DAVIS pretended that nonpayment was the result of the resale of the product by Premium Concepts & Design, Inc. to its customer who had not yet paid for the product received.

4.    Tammie Roth HANANIA acted as the Managing Member and owner of Circle 8 Gaming, LLC, an alleged seller of video game accessories.   Tammie HANANIA assisted her son, Stefano Guido VITALE, and other co-conspirators in selling and attempting to sell fraudulent commercial invoices to factoring companies.  She also assisted in factoring transactions not directly involving Circle 8 Gaming, LLC, by posing as a trade reference for another company used by her

co-conspirators to sell receivables or otherwise obtaining financing from a factoring company.

5.      Edward Peter HANANIA held himself out as the Managing Member of JJ Gaming Co., LLC, a company he claimed sold video game accessories. Edward HANANIA assisted his stepson, Stefano Guido VITALE and other conspirators in obtaining and attempting to obtain financing in the name of JJ Gaming Co., LLC from factoring companies. Additionally, he acted as a credit reference in transactions not specifically involving JJ Gaming Co., LLC.

B. FACTORING AGREEMENTS

1.      Factoring companies purchase, at a discount, commercial accounts receivable from businesses with whom the factoring company has formed a contractual relationship. The business' account(s) receivable are based, or are alleged to have been based, on the business having performed service(s) or sold good(s) to their customer. The performance of the service or sale of goods is evidenced by invoice(s).

2.      The discount percentage of the accounts receivable purchased by the factoring company is determined by the risk assumed by the factoring company. The risk to the factoring company relates, in part, to the ability of the factoring company to later collect on the receivable. Businesses typically sell their accounts receivables to factoring companies based on cash flow needs.

3.    To enter into a factoring agreement, typically a business must establish to the factoring company that they are a business in good standing and that the company behind the receivable is also in good standing and financially sound. Business and personal financial statements are frequently collected, as is bank account information to verify the financial soundness of the business. Often the prior ability of the business to collect from their customer, (the company invoiced for the service or goods sold), is reviewed by the factoring company to determine risk to the factoring company. To evaluate the risk the factoring company will ask for various documents concerning the transaction. These documents can include personal and business financial statements, bank records and payment histories of each of the companies involved in the transaction. Once a factoring company has purchased the account(s) receivable from a business, the factoring company advances funds to the business for the purchased account(s) and then collects payment from the customer named in the invoice(s).

4.    Often a business will purchase trade credit insurance to mitigate the risk that their customer will default on their accounts receivable debt. Trade credit insurance insures a company's ability to collect accounts receivables owed it by its customers if its customer becomes insolvent or defaults.

5.    Factoring companies may also enter into other financing arrangements which assist with a business' cash flow needs, such as providing loans, advancing

funds and financing specific business transactions. These arrangements also assist with a business with their cash flow needs. In these types of arrangements, factoring companies will conduct an evaluation of the specific transaction being financed and will also evaluate the creditworthiness of the business and their customer, similar to the evaluations it does for factoring transactions. Their evaluation also entails asking for transaction documents, personal and business financial statements, bank records and payment histories of each of the companies involved in the transaction.

6.　　Bibby Financial Services (Midwest), Inc., hereinafter "BFS Midwest", was a corporation based in Illinois whose services included assisting their client's cash flow needs through accounts receivable factoring.　Accounts receivable factoring was offered by BFS Midwest as a means to create working capital so their client's business could continue to grow.

7.　　Diversified Business Resources, Inc., hereinafter "DBR", was a Southern California based invoice factoring company.　DBR specialized in providing working capital to small companies who were not yet eligible to receive financing from a bank.

8.　　Crown Financial, LLC was a business based in Houston, Texas that had been in the factoring business since 1989.　Their funding programs utilized

6

commercial accounts receivable invoices to advance cash to fund their client's business.

## C. THE EXPORT-IMPORT BANK OF THE UNITED STATES

The Export-Import Bank of the United States (Ex-Im Bank) is the official export credit agency of the United States. Ex-Im Bank assists in financing and facilitating the export of U.S. goods and services to international markets by assuming credit risks through a variety of programs including working capital guarantees and export credit insurance.

### 1. Working Capital Guarantee Program

The Working Capital Guarantee Program (WCGP) was developed by Ex-Im Bank pursuant to the Export Trading Company Act of 1982. The WCGP was designed to give U.S. exporters, and especially small and mid-size U.S. exporters (hereinafter "Borrower") access to a source of working capital – that is, a line of credit to be used to pay general business expenses - while expanding their exports from the United States. This program allows Borrowers to obtain loans from commercial lenders backed by the Ex-Im Bank guarantee, for the purpose of purchasing or manufacturing U.S. goods and services for export.

Loan guarantees are made available to eligible banks, providers of commercial credit, or other public or private lenders (hereinafter "Lender") through the WCGP. Ex-Im Bank's guarantee to the Lender covers up to ninety

percent of the principal, accrued interest thereon, and certain collateral protection and enforcement costs. The Lender must retain at least ten percent of the credit risk. In the event a Borrower defaults on the commercial loan, the Lender holding the guarantee files a claim with Ex-Im Bank. Provided the Lender has complied with the conditions of the WCGP, Ex-Im Bank pays the claim and in exchange the Lender assigns to Ex-Im Bank the Borrower's debt previously owed to the Lender.

To participate in the WCGP as a Borrower, the exporting company must operate as a going concern and currently export or plan to export U.S. goods and/or services to a foreign buyer and the Borrower must be located in the United States. In addition, to be eligible to participate in the WCGP the Borrower must have a revenue-producing operating history of at least one year and a positive net worth. The business owners are generally required to personally guarantee repayment of the loan.

Under the WCGP, Borrowers have financial reporting requirements which include fiscal year-end financial statements of the Borrower, and each Guarantor. Each Borrower must submit quarterly financial statements to the Lender no later than 45 days after the end of each quarter.

A Lender may only make disbursements on behalf of the Borrower against export-related inventory, actual export orders or invoiced foreign accounts receivable. Credit accommodations must be within the availability on an Export-

8

Related Borrowing Base consisting of acceptable collateral. Borrowers are required to submit to the Lender, an Export-Related Borrowing Base Certificate at least once per month. The accounts receivable and inventory balances represented on such Export-Related Borrowing Base Certificates must be reconciled with the Borrower's general ledger, Accounts Receivable Aging Report, and Inventory schedule for that month-end.

2. Export Credit Insurance

Eligible exporters may purchase Export Credit Insurance through Ex-Im Bank. Short-Term Export Credit Insurance protects U.S. exporters against non-payment by foreign buyers due to commercial risks and political risks. Insured foreign receivables can be added to the Borrower's borrowing base under the WCGP by assignment of policy proceeds to the Lender.

For coverage under the short-term insurance policy, products must be shipped from the United States and have at least 50% U.S. content. This policy allows exporters to insure most sales to eligible international buyers on open account credit terms. Under the open account credit terms, the borrower promises to pay for the goods or services at a specific future date. Coverage includes 90-95% commercial, 95-100% political coverage against buyer payment defaults. If purchasing a Multi-Buyer Policy and the exporter qualifies as a small business, enhanced coverage may be offered.

3. Lenders

a. BOK Financial Corporation is a financial services company based in Tulsa, Oklahoma. One of its holdings is BOKF, NA, which operates seven banking divisions including Bank of Arizona and Bank of Texas. BOKF, NA was authorized to participate as a Lender under the WCGP at Ex-Im Bank.

b. BOKF, NA, is insured by the Federal Deposit Insurance Corporation (FDIC) and its banking divisions are covered by this charter. The FDIC is an agency of the federal government with insures the deposits of member banks against loss with the purpose of preventing their collapse and instilling public confidence in the nation's banking institutions.

D. THE CONSPIRACY

From at least April 1, 2012 and continuing through February 18, 2015, in the Southern District of Texas and elsewhere, the defendants,

STEFANO GUIDO VITALE
a.k.a. Steven Michael Vincent Palizzi
a.k.a. Steven Nakayama
a.k.a. Steve
a.k.a. William Lopez
ALAN MICHAEL LESCHYSHYN
a.k.a. Bob
a.k.a. Michael Leschyshyn
a.k.a. Alan Michaels
a.k.a. Alan Leschyn
a.k.a. Michael
a.k.a. Antonio Esposito
BREE ANN DAVIS
TAMMIE ROTH HANANIA

10

and
EDWARD PETER HANANIA

did knowingly conspire and agree with each other and others known and unknown to the grand jury, to commit the following offenses against the United States:

1.    To knowingly devise and intend to devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses, representations, and promises, and to knowingly use and cause to be used interstate wire communications facilities in carrying out the scheme to defraud, in violation of Title 18, United States Code, Section 1343;

2.    To knowingly devise and intend to devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses, representations, and promises, and to knowingly use and cause to be used the United States mails and private and commercial interstate carriers for the purpose of executing the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1341.

3.    To knowingly execute and attempt to execute a scheme and artifice to defraud financial institutions the accounts of which were insured by the Federal Deposit Insurance Corporation (FDIC), and to obtain money, funds, and property under the custody and control of the financial institutions, by means of false and fraudulent pretenses, representations, and promises in violation of Title 18, United States Code, Section 1344.

E. <u>MANNER AND MEANS OF THE SCHEME AND ARTIFICE</u>

The manner and means of the scheme and artifice were as follows:

1.    Stefano Guido VITALE, Alan Michael LESCHYSHYN, Bree Ann DAVIS, Tammie Roth HANANIA, Edward Peter HANANIA and their co-conspirators would and did establish, and cause to be established, business entities for the purpose of executing their scheme to defraud. These businesses were used in combination, to mislead factoring companies and credit insurance providers with regard to the customers and vendors of the companies proposing their accounts receivable be purchased by the factoring company.

2.    Stefano Guido VITALE, Alan Michael LESCHYSHYN, Bree Ann DAVIS and their co-conspirators would and did provide false information to Dun & Bradstreet, Inc., in an effort to mislead factoring companies and credit insurance providers regarding the creditworthiness of the business entities they utilized in their scheme to defraud.

3.    Stefano Guido VITALE would and did recruit individuals to pose as representatives of one business entity seeking to sell to factoring companies, non-existent accounts receivable from another business entity created by VITALE, LESCHYSHYN or a co-conspirator.

4.    Stefano Guido VITALE and Alan Michael LESCHYSHYN would and did coach Tammie Roth HANANIA, Edward Peter HANANIA and Bree Ann

DAVIS in how to approach and sell non-existent accounts receivable to factoring companies.

5.      Stefano Guido VITALE and Alan Michael LESCHYSHYN would and did alter, and caused to be altered, bank account records for the purpose of convincing factoring companies to purchase non-existent accounts receivable or otherwise provide funding to one of their business entities.

6.      Stefano Guido VITALE and Alan Michael LESCHYSHYN would and did manufacture purchase orders, invoices, and financial statements for the purpose of convincing factoring companies to purchase non-existent accounts receivable or otherwise provide funding to one of their business entities.

7.      Stefano Guido VITALE, Alan Michael LESCHYSHYN, Bree Ann DAVIS, Tammie Roth HANANIA, Edward Peter HANANIA and their co-conspirators would and did electronically provide and cause to be provided, through email, altered bank records and manufactured purchase orders and invoices and false financial statements to factoring companies in execution of their scheme to defraud.

8.      Stefano Guido VITALE, Alan Michael LESCHYSHYN, Bree Ann DAVIS, Tammie Roth HANANIA and Edward Peter HANANIA and their co-conspirators would and did purchase and cause to be purchased trade credit insurance to induce a factoring company to enter into a factoring agreement.

13

9. Stefano Guido VITALE, Alan Michael LESCHYSHYN, Bree Ann DAVIS, Tammie Roth HANANIA, Edward Peter HANANIA and their co-conspirators would and did provide false trade references in an effort to satisfy the factoring company, and/or the credit insurance provider, that the company whose invoice was being sold at a discount to the factoring company was a good credit risk. These trade references, like the company invoiced, were entities created and utilized by VITALE, LESCHYSHYN, DAVIS, Tammie HANANIA, Edward HANANIA and their co-conspirators in executing the scheme to defraud.

10. Stefano Guido VITALE, Alan Michael LESCHYSHYN, Bree Ann DAVIS, Tammie Roth HANANIA, and Edward Peter HANANIA would and did receive, and cause to be received and deposited into bank accounts under their control, wire transfers from factoring companies who purchased non-existent accounts receivable or otherwise provided funding to business entities utilized by VITALE, LESCHYSHYN, DAVIS, Tammie HANANIA, and Edward HANANIA in the execution of the scheme to defraud.

11. Alan Michael LESCHYSHYN would and did transfer proceeds received from factoring companies to VITALE and DAVIS and other co-conspirators.

12. Stefano Guido VITALE, Alan Michael LESCHYSHYN, Bree Ann DAVIS, Tammie Roth HANANIA and Edward Peter HANANIA after defaulting

on contracts entered into with factoring companies, would and did engage in communications designed to avoid or stall legal proceedings by the factoring company. Threats of bankruptcy as well as other tactics were used to entice the factoring company to settle their claims for significantly less than was owed on the invoices.

13.    Stefano Guido VITALE, Alan Michael LESCHYSHYN, Tammie Roth HANANIA, and Edward Peter HANANIA, would and did file claims or caused claims to be filed with the insurance companies from whom trade credit insurance had been purchased for factoring agreements.

14.    Stefano Guido VITALE, Alan Michael LESCHYSHYN and their co-conspirators obtained over $6,000,000.00 in fraudulently obtained financing from factoring and finance companies.

15.    Stefano Guido VITALE and Alan Michael LESCHYSHYN would and did apply for and caused to be applied for a line of credit from BOKF, NA doing business as, Bank of Arizona.

16.    Stefano Guido VITALE and Alan Michael LESCHYSHYN would and did apply for and caused to be applied for an Ex-Im Bank Working Capital Guarantee.

17.    Stefano Guido VITALE and Alan Michael LESCHYSHYN would and did apply for and caused to be applied for an Ex-Im Bank Multi-Buyer Export

Credit Insurance Policy.

F.  ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy described in Count One and to effect the objects thereof, the defendants named therein and other persons both known and unknown to the grand jury, performed or caused the performance of one or more of the following acts, among others not described herein, in the Southern District of Texas and elsewhere on or about the following dates:

(1)    August 9, 2012, Stefano Guido VITALE sent an email which set out the steps to complete a transaction with a factoring company.

**Circle 8 Gaming, LLC Transactions**

(2)    March 7, 2013, Stefano Guido VITALE and Tammie Roth HANANIA caused a Certificate of Formation of Circle 8 Gaming, LLC to be filed with the Delaware Secretary of State.

(3)    March 27, 2013, Tammie Roth HANANIA opened Citibank account XXXX7166 in the name of Circle 8 Gaming, LLC.

(4)    April 21, 2013, Alan Michael LESCHYSHYN sent an email to Tammie Roth HANANIA, with an attachment of a completed credit application in the name of Circle 8 Gaming, LLC with BFS Midwest, which LESCHYSHYN asked Tammie HANANIA to sign and email back to him.

(5)    April 22, 2013, Tammie Roth HANANIA signed a credit application

with BFS Midwest, as the Member Manager of Circle 8 Gaming, LLC.

(6) June 5, 2013, Stefano Guido VITALE signed an acknowledgement as President of Premium Concepts & Design, Inc., that he had received the product provided by Circle 8 Gaming, LLC under invoice 53013 for $499,873.27, and agreed to pay the Circle 8 Gaming, LLC invoice directly to BFS Midwest when due.

(7) June 6, 2013, Stefano Guido VITALE, Alan Michael LESCHYSHYN and Tammie Roth HANANIA caused BFS Midwest to wire transfer $399,541.52 to Circle 8 Gaming, LLC's Citibank account XXXX7166.

(8) June 7, 2013, Tammie Roth HANANIA and Alan Michael LESCHYSHYN caused $322,000 in fraudulently obtained proceeds to be wire transferred from Circle 8 Gaming, LLC's Citibank account XXX7166 to JP Morgan Chase Bank account XXX7602 held in the name Alan Industries, LLC.

(9) June 7, 2013, Alan Michael LESCHYSHYN and Stefano Guido VITALE caused $147,000 to be wire transferred from Alan LESCHYSHYN's JP Morgan Chase Bank account XXX9889 to, Bank of America account XXX1310 held in the name of Stefano Guido VITALE.

(10) June 20, 2013, Stefano Guido VITALE signed an acknowledgement as the President of Premium Concepts & Design, Inc. that all the goods and services provided by Circle 8 Gaming, LLC under invoice 6193 for $499,802.03

were completed and accepted.

(11) June 24, 2013, Stefano Guido VITALE, Alan Michael LESCHYSHYN and Tammie Roth HANANIA caused BFS Midwest to wire transfer $399,816.62 to Circle 8 Gaming, LLC's Citibank account XXXX7166.

(12) June 24, 2013, Tammie Roth HANANIA and Alan Michael LESCHYSHYN caused the wire transfer of $283,000.00 from Circle 8 Gaming, LLC's account XXXX7166 to Alan Industries account XXXX7602.

(13) June 25, 2013, Stefano Guido VITALE and Alan Michael LESCHYSHYN caused $183,000.00 to be wire transferred from LESCHYSHYN's PC&D Exports, LLC JP Morgan Chase Bank account XXXX0639 to VITALE's PC&D Exports, LLC account XXXX1732 at Bank of America.

(14) July 18, 2013, Stefano Guido VITALE sent an email to Bree Ann DAVIS instructing her to call BFS Midwest, and introduce herself as the point of contact for Premium Concepts & Design, Inc.

(15) July 30, 2013, Stefano Guido VITALE sent an email to Bree Ann DAVIS instructing her to explain to BFS Midwest that Premium Concepts & Design, Inc. will have a better idea in mid-August when they can pay the Circle 8 Gaming, LLC invoice due to a late delivery to their customer.

(16) August 12, 2013, Bree Ann DAVIS sent an email to BFS Midwest

regarding Premium Concepts & Design, Inc.'s past due payment on the Circle 8 Gaming, LLC invoice 53013 for $499,873.27.

(17) August 27, 2013   Bree Ann DAVIS responded to an email from BFS Midwest, in which she suggested BFS Midwest file a claim against the trade credit insurance rather than instigating legal action.

(18) September 11, 2013, Tammie Roth HANANIA signed an insurance claim with HCC Credit.

(19) December 5, 2013, Stefano Guido VITALE asked Tammie Roth HANANIA to scan and send to VITALE copies of two wire transfer requests so that VITALE could make alterations to them.

(20) December 6, 2013, Stefano Guido VITALE altered bank records from the Circle 8 Gaming, LLC bank account, by changing the beneficiary of the wire transfer of $322,000.00 on June 7, 2013 and the wire transfer of $283,000 on June 24, 2013 from Alan Industries LLC to EinsteinModz, LLC.

(21) January 8, 2014, Tammie Roth HANANIA met with representatives of HCC Credit.

**JJ Gaming Co., LLC Transaction**

(22) February 6, 2013, Alan Michael LESCHYSHYN caused Articles of Organization to be filed for JJ Gaming Co., LLC with the Colorado Secretary of State.

(23)    April 24, 2013, Stefano Guido VITALE sent an email to Edward Peter HANANIA with a template for a personal financial statement attached and told HANANIA to embellish the numbers to make it seem like a better risk.

(24)    June 13, 2013, Alan Michael LESCHYSHYN and Edward Peter HANANIA signed and caused to be signed, a QBE application form for Trade Credit Insurance for JJ Gaming Co., LLC.

(25)    July 1, 2013, Edward Peter HANANIA opened Wells Fargo Bank accounts XXXX1831 and XXXX1100 in the name JJ Gaming Co. LLC.

(26)    August 22, 2013, Alan Michael LESCHYSHYN sent an email to Edward Peter HANANIA introducing HANANIA to a representative of DBR.

(27)    August 27, 2013, Stefano Guido VITALE, on behalf of Premium Concepts and Design, Inc., signed an Acknowledgement of Indebtedness and Agreement to Pay DBR on the sale of the JJ Gaming Co., Inc. invoice 08022013 to DBR.

(28)    August 28, 2013, Edward Peter HANANIA, on behalf of JJ Gaming Co. Inc., signed an Accounts Receivable Purchase and Security Agreement with DBR.

(29)    August 30, 2013, Stefano Guido VITALE, Alan Michael LESCHYSHYN and Edward Peter HANANIA caused DBR to wire transfer $479,901.05 to Wells Fargo Bank account XXXX1100 held in the name JJ

Gaming Co., LLC.

(30)   August 30, 2013, Alan Michael LESCHYSHYN and Edward Peter HANANIA caused a wire transfer of $379,901.05 from HANANIA's JJ Gaming Co. LLC's Wells Fargo Bank account XXXX1831 to LESCHYSHYN's JJ Gaming Co. LLC account XXX3295 at JP Morgan Chase Bank.

(31)   October 1, 2013, Bree Ann DAVIS acting as Controller of Premium Concepts and Design, Inc. informed DBR, during a telephone, call that Premium Concepts and Design, Inc. would be unable to make payment on the JJ Gaming Co, LLC invoice of $599,913.81 which was due October 2, 2013.

(32)   October 20, 2013, Alan Michael LESCHYSHYN instructed Edward Peter HANANIA to call the representative of DBR to find out what he was up to.

(33)   November 21, 2013, Edward Peter HANANIA sent an email to a representative of QBE with attachments of documents related to JJ Gaming Co., LLC's invoice 08022013 to Premium Concepts and Design, Inc.

(34)   April 3, 2014, Edward Peter HANANIA, caused an insurance claim on the trade credit insurance policy issued by QBE to be sent to QBE by Federal Express.

**GBL Associates, LLC Transaction**

(35)   August 10, 2013, Stefano Guido VITALE sent an email to Bree Ann DAVIS explaining the requirements to get accepted into Dun and Bradstreet's

21

Trade Exchange Program.

(36)  September 6, 2013, Bree Ann DAVIS agreed to purchase Trade Credit Insurance from AIG.

(37)  October 9, 2013, Bree Ann DAVIS sent an email to Stefano Guido VITALE in which the June 2013 bank statement for GBL Associates, LLC was attached.

(38)  October 22, 2013, Alan Michael LESCHYSHYN sent an email to VITALE explaining the June 2013 GBL Associates, LLC bank statement needed to reflect two large incoming and outgoing wires with the statement balance still equal to $37.64.

(39)  October 22, 2013, Stefano Guido VITALE sent an email to Alan Michael LESCHYSHYN attaching an altered June 2013 bank statement for the GBL Associates, LLC bank account.

(40) October 29, 2013, Bree Ann DAVIS sent an email to Crown Financial, LLC in Houston, Texas in which the altered June 2013 bank statement for GBL Associates, LLC's bank account was attached.

(41)  November 1, 2013, Alan Michael LESCHYSHYN sent an email to Crown Financial, LLC in Houston, Texas which he, as President of Alan Industries, vouched for PC&D Exports LLC's good credit with his company.

(42)  November 4, 2013, Bree Ann DAVIS sent an email to Crown

Financial, LLC in Houston, Texas with an attachment of a purchase order from GBL Associates, LLC to EinsteinModz Gaming Group, LLC for the purchase of 4011 BV package – GOW with a price of $173.89 per unit and a total price of $697,490.84 which was to be shipped to PC&D Exports, LLC in Miami, Florida.

(43)  November 12, 2013, Stefano Guido VITALE met a representative of Crown Financial, LLC at a warehouse in Miami, Florida.

(44)  November 14, 2013, Bree Ann DAVIS caused the Profit Sharing Agreement between GBL Associates, LLC and Crown Financial, LLC to be sent by overnight mail to Crown Financial, LLC in Houston, Texas.

(45)  November 14, 2013, Bree Ann DAVIS caused an email to be sent to Crown Financial, LLC in Houston, Texas with an attached invoice from EinsteinModz Gaming Group, LLC to GBL Associates, LLC with wiring instructions for Wells Fargo Bank account XXXX1173 held in the name BGREM, LLC.

(46)  November 15, 2013, Stefano Guido VITALE, Alan Michael LESCHYSHYN, Bree Ann DAVIS, and Tammie Roth HANANIA caused Crown Financial, LLC to wire transfer $697,490.84 from Houston, Texas to Wells Fargo Bank account XXXX1173 held in the name of BGREM LLC.

(47)  November 18, 2013, Stefano Guido VITALE, Alan Michael LESCHYSHYN and Bree Ann DAVIS caused the wire transfer of $610,474.20

from BGREM LLC's Wells Fargo Bank account XXXX1173 to JP Morgan Chase Bank account XXXX7602 held in the name of Alan Industries LLC.

(48) November 18, 2013, Alan Michael LESCHYSHYN transferred $512,000 from JP Morgan Chase Bank account XXXX7602 held in the name of Alan Industries LLC to JP Morgan Chase Bank account XXXX9889 held in the name of Alan LESCHYSHYN.

(49) November 18, 2013, Alan Michael LESCHYSHYN transferred $85,000 from his JP Morgan Chase Bank account XXXX9889 to JP Morgan Chase Bank account XXXX2230 held in the name of Bree A. DAVIS.

(50) November 18, 2013, Alan Michael LESCHYSHYN wire transferred $427,000 from his JP Morgan Chase Bank account XXXX9889 to Bank of America account XXXX1310 held in the name of Stefano Guido VITALE.

**Transaction with Ex-Im Bank**

(51) March 17, 2014, Alan Michael LESCHYSHYN, using the name Alan Michaels, and Stefano Guido VITALE met with bankers at the Bank of Arizona.

(52) March 19, 2014, Alan Michael LESCHYSHYN, using the name Alan Michaels, sent the Bank of Arizona an email with an attached February 2014 bank statement for Bank of America account XXX1732 held in the name PC&D Exports LLC which had been altered.

(53) April 18, 2014, Stefano Guido VITALE and Alan Michael

LESCHYSHYN caused Ex-Im Bank to approve a dual multi-buyer policy quote with $3,000,000 in policy payment limit.

(54) May 6, 2014, Stefano Guido VITALE and Alan Michael LESCHYSHYN caused BOKF, NA to deposit $900,000 into Bank of Arizona account XXX7295 held in the name of PCD Exports, LLC.

(55) May 7, 2014, Stefano Guido VITALE caused a wire transfer of $795,000 from the PCD Exports, LLC Bank of Arizona account XXX7295 to Wells Fargo Bank account XXX1373 held in the name of B.G.R.E.M., LLC.

(56) May 7, 2014, Stefano Guido VITALE caused a transfer of $700,000 from B.G.R.E.M.'s Wells Fargo Bank account XXX1373 to B.G.R.E.M., LLC's Wells Fargo Bank account XXX1381.

(57) May 8, 2014, Stefano Guido VITALE sent an email to the Vice President of Trade Finance at the Bank of Texas in Houston, Texas concerning the Ex-Im Bank approval of PCD Export's SBCL request for their alleged buyer, Game World BV, with attached documents for a $100,000 draw on the line of credit.

(58) May 8, 2014, Stefano Guido VITALE and Alan Michael LESCHYSHYN caused BOKF, NA to deposit $100,000 into Bank of Arizona account XXX7295 held in the name of PCD Exports, LLC.

(59) May 12, 2014, Stefano Guido VITALE caused the wire transfer of

$727,500.00 from B.G.R.E.M., LLC's Wells Fargo Bank account XXX1381 to PC&D Exports, LLC's Bank of America account XXX1732.

(60)　May 12, 2014, Stefano Guido VITALE caused the wire transfer of $95,000 from PC&D Exports, LLC's Bank of Arizona account XXX7295 to PC&D Exports, LLC's Bank of America account XXX1732.

(61)　May 28, 2014, Stefano Guido VITALE signed, on behalf of PC&D Exports, LLC, an Ex-Im Bank application for Special Buyer Credit Limit under a Multi-Buyer Export Credit Insurance Policy concerning the alleged buyer Gameworld BV.

(62)　June 16, 2014, Stefano Guido VITALE sent an email to the Vice President of Trade Finance at the Bank of Texas in Houston, Texas informing her that he paid for the insurance policy coverage on the Game World BV invoice.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
### (Conspiracy - Title 18, U.S.C. §1956(h))

A.　The Grand Jury re-alleges and incorporates by reference, as though fully set forth herein, the allegations contained in sections A, B, D and E as set out in Count One of the indictment.

B.　From in or about April 1, 2012 and continuing through February 18, 2015, in the Southern District of Texas, and elsewhere, and within the jurisdiction

26

of this Court

STEFANO GUIDO VITALE
a.k.a. Steven Michael Vincent Palizzi
a.k.a. Steven Nakayama
a.k.a. Steve
a.k.a. William Lopez
ALAN MICHAEL LESCHYSHYN
a.k.a. Bob
a.k.a. Michael Leschyshyn
a.k.a. Alan Michaels
a.k.a. Alan Leschyn
a.k.a. Michael
a.k.a. Antonio Esposito
BREE ANN DAVIS
TAMMIE ROTH HANANIA
and
EDWARD PETER HANANIA

defendants herein, did unlawfully, knowingly and intentionally combine, conspire, confederate and agree with each other and others known and unknown to the grand jury, to commit the following offenses against the United States in violation of Title 18, United States Code, Sections 1956 and 1957, to wit:

1.    To knowingly and willfully conduct and attempt to conduct a financial transaction, the activities of which affect interstate commerce with the proceeds of a specified unlawful activity, that is, mail fraud, a violation of Title 18, United States Code, Section 1341; wire fraud, a violation of Title 18, United States Code, Section 1343; and bank fraud, a violation of Title 18, United States Code, Section 1344, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of

said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction, that is funds and monetary instruments, represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(I) .

2.    To knowingly engage in and attempt to engage in monetary transactions within the United States in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity, that is, mail fraud, wire fraud, and bank fraud in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT THREE
### (Wire Fraud- Title 18, U.S.C. §1343)

1.    The Grand Jury re-alleges and incorporates by reference, as though fully set forth herein, the allegations contained in sections A, B, D and E as set out in Count One of the indictment.

2.    On or about November 15, 2013, in the Southern District of Texas, and within the jurisdiction of this Court

STEFANO GUIDO VITALE
a.k.a. Steven Michael Vincent Palizzi
a.k.a. Steven Nakayama
a.k.a. Steve

28

a.k.a. William Lopez
ALAN MICHAEL LESCHYSHYN
a.k.a. Bob
a.k.a. Michael Leschyshyn
a.k.a. Alan Michaels
a.k.a. Alan Leschyn
a.k.a. Michael
a.k.a. Antonio Esposito
and
BREE ANN DAVIS

defendants herein, did knowingly devise and attempt to devise a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises and did intentionally cause, by means of false and fraudulent pretenses, representations and promises the interstate wire transfer of approximately $697,490.84 from Crown Financial, LLC's Community Bank of Texas bank account to B.G.R.E.M. LLC's Wells Fargo Bank account XXXX1173.

## COUNTS FOUR THROUGH TEN
### (Wire Fraud- Title 18, U.S.C. §1343)

1. The Grand Jury re-alleges and incorporates by reference, as though fully set forth herein, the allegations contained in sections A, B, D and E as set out in Count One of the indictment.

2. On or about the following dates, in the Southern District of Texas and elsewhere, the defendants named below, aided and abetted by each other and others known and unknown to the grand jury, did knowingly devise, intend to

29

devise, and participate in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and material omissions, which scheme is set forth in section E of Count One of the indictment.

3.     In each of counts Four through Ten, the defendants, for the purpose of executing, and attempting to execute, the scheme to defraud, and to obtain money by means of false and fraudulent pretenses and representations did cause to be transmitted by means of a wire communication in interstate commerce the writings, signs, signals and sounds, that is, the transmission of emails described below for each count:

| COUNT | DATE | DEFENDANT | TRANSMISSION DESCRIPTION |
|-------|------|-----------|--------------------------|
| Four | 12/11/2013 | Stefano Guido Vitale & Alan Michael Leschyshyn | Email sent from michael@einsteinmodz.com to Crown Financial in Houston, TX with BGREM, LLC financials attached. |
| Five | 12/12/2013 | Stefano Guido Vitale, Alan Michael Leschyshyn & Tammie Roth Hanania | Email sent from circle8gaming@gmail.com to Crown Financial in Houston, TX with a Credit Reference attached. |
| Six | 12/12/2013 | Stefano Guido Vitale & Alan Michael Leschyshyn | Email sent from alan@alan-industries.com to Crown Financial in Houston, TX with a Credit Reference attached. |

30

| COUNT | DATE | DEFENDANT | TRANSMISSION DESCRIPTION |
|---|---|---|---|
| Seven | 12/12/2013 | Stefano Guido Vitale & Alan Michael Leschyshyn | Email sent from stefano@pcanddexports.com to Crown Financial in Houston, TX with an altered November 2013 Wells Fargo Bank statement for account XXX3494 attached. |
| Eight | 12/17/2013 | Stefano Guido Vitale & Alan Michael Leschyshyn | Email from robert.michaels@wfbna.com to Crown Financial in Houston, Texas with a bank reference attached. |
| Nine | 4/17/2014 | Stefano Guido Vitale & Alan Michael Leschyshyn | Email from stefano@pcanddexports.com to the Bank of Texas in Houston, TX concerning the UPS shipment of four original standard assignment forms. |
| Ten | 6/13/2014 | Stefano Guido Vitale & Alan Michael Leschyshyn | Email from stefano@pcanddexports.com to the Bank of Texas in Houston, TX concerning the credit limit for buyer Gamesnet. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## NOTICE OF FORFEITURE

The United States gives notice to defendants,

STEFANO GUIDO VITALE
a.k.a. Steven Michael Vincent Palizzi
a.k.a. Steven Nakayama
a.k.a. Steve
a.k.a. William Lopez
ALAN MICHAEL LESCHYSHYN
a.k.a. Bob
a.k.a. Michael Leschyshyn
a.k.a. Alan Michaels
a.k.a. Alan Leschyn
a.k.a. Michael
a.k.a. Antonio Esposito
BREE ANN DAVIS
TAMMIE ROTH HANANIA
and
EDWARD PETER HANANIA,

that property is subject to forfeiture as follows:

### 28 U.S.C. §2461(c); 18 U.S.C. §§981(a)(1)(C) & 982(a)(2)

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2), the United States gives notice to defendants

STEFANO GUIDO VITALE
a.k.a. Steven Michael Vincent Palizzi
a.k.a. Steven Nakayama
a.k.a. Steve
a.k.a William Lopez
ALAN MICHAEL LESCHYSHYN
a.k.a. Bob
a.k.a. Michael Leschyshyn
a.k.a. Alan Michaels
a.k.a. Alan Leschyn
a.k.a. Michael

32

a.k.a. Antonio Esposito
BREE ANN DAVIS
TAMMIE ROTH HANANIA
and
EDWARD PETER HANANIA

that upon conviction of conspiracy in violation of Title 18, United States Code, Section 1349, or of violations of Title 18, United States Code, Section 1343 all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses is subject to forfeiture.

## NOTICE OF FORFEITURE
### 18 U.S.C. §982(a)(1)

Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to defendants

STEFANO GUIDO VITALE
a.k.a. Steven Michael Vincent Palizzi
a.k.a. Steven Nakayama
a.k.a. Steve
a.k.a. William Lopez
ALAN MICHAEL LESCHYSHYN
a.k.a. Bob
a.k.a. Michael Leschyshyn
a.k.a. Alan Michaels
a.k.a. Alan Leschyn
a.k.a. Michael
a.k.a. Antonio Esposito
BREE ANN DAVIS
TAMMIE ROTH HANANIA
and
EDWARD PETER HANANIA,

33

that upon conviction of conspiracy in violation of Title 18, United States Code, Section 1956(h), all property, real or personal, involved in such conspiracy or traceable to such property, is subject to forfeiture.

## Property Subject to Forfeiture

The property subject to forfeiture includes, but is not limited to, approximately $6,000,000.00.

## Money Judgment

Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, for which the defendants may be jointly and severally liable and which is approximately $6,000,000.00.

## Substitute Assets

Defendants are notified that in the event that property subject to forfeiture, as a result of any act or omission of defendants,

(A) cannot be located upon the exercise of due diligence;
(B) has been transferred or sold to, or deposited with, a third party;
(C) has been placed beyond the jurisdiction of the court;
(D) has been substantially diminished in value; or
(E) has been commingled with other property that cannot be divided without difficulty,

the United States will seek to forfeit any other property of the defendants up to the total value of the property subject to forfeiture pursuant to Title 21, United States Code, Section 853(p), as incorporated by reference in Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b).

A TRUE BILL:

Original Signature on File

_____
FOREPERSON OF THE GRAND JURY

KENNETH MAGIDSON
UNITED STATES ATTORNEY

By: _____
Melissa J. Annis
Assistant United States Attorney

35